**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ABDIMAJID M. AHMED,

            Civil No. 25-1255 (JRT/SGE)

     Plaintiff,

v.

          **MEMORANDUM OPINION AND ORDER**
          **GRANTING DEFENDANT'S MOTION TO**
2U, Inc.             **DISMISS**

     Defendant.

---

Abdimajid M. Ahmed, 2137 Valkyrie Court Northwest, Rochester, MN 55901, *pro se* Plaintiff.

Jason E. Reisman, **BLANK ROME LLP**, 130 North Eighteenth Street, One Logan Square, Philadelphia, PA 19103; Rikke A. Dierssen-Morice, **BLANK ROME LLP**, 444 West Lake Street, Suite 1650, Chicago, IL 60606, for Defendant.

Plaintiff Abdimajid M. Ahmed brought this pro se action after the U.S. Equal Employment Opportunity Commission (EEOC) dismissed his charge against his former employer, Defendant 2U, Inc ("2U"). Ahmed alleges that 2U discriminated and retaliated against him on account of his race, national origin, disability, and use of leave. Ahmed asserts six different federal and state claims against Defendant.[1] Defendant moves to dismiss Ahmed's complaint.

---

[1] Ahmed brought eight claims in the Complaint, but he withdrew Counts VII and VIII to promote "procedural efficiency." (Pl.'s Mem. Opp'n Mot. Dismiss at 44–45, Oct. 17, 2025, Docket

After careful review of the pleadings and the parties' arguments, Court concludes that Ahmed fails to plausibly allege his federal claims.  The Court will dismiss Ahmed's claims under Title VII of the Civil Rights Act and the Americans with Disabilities Act (ADA) with prejudice because such claims are time-barred.  The Court will also dismiss Ahmed's FMLA claims but will do so without prejudice.[2]  Because the Court will dismiss the federal claims, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss those claims without prejudice.

**BACKGROUND**

## I.    FACTUAL BACKGROUND

Ahmed is an African-American man of Somali descent.  (Compl. ¶ 7, Apr. 3, 2025, Docket No. 1.)  2U is an educational technology company based in Lanham, Maryland.  (*Id.* ¶ 8.)  In June 2017, Ahmed began working for 2U as a Student Success Advisor.  (*Id.* ¶ 9.)  He was promoted in October 2017 and again in September 2018.  (*Id.* ¶¶ 10, 13.)  During the first couple of years of his employment with 2U, Ahmed was selected to launch the Harvard Business Analytics Program (the "Harvard Program"), which was 2U's "most valuable and important client program," and serve as interim manager for three months.

---

No. 21.)  The Court will therefore dismiss Counts VII and VIII and address only the six remaining claims, Counts I through VI.

[2] Dismissal without prejudice means that Ahmed can make any necessary changes and refile his complaint.

(*Id.* ¶¶ 11, 14.)   He states that his performance in these endeavors earned him organization-wide recognition.  (*Id.* ¶ 15.)

However, Ahmed alleges that 2U began treating him differently after it reorganized its management structure in March 2020 and hired a new Senior Director, Amy Halter. (*Id.* ¶¶ 16–17.)  In June 2020, Ahmed applied for promotion to a management position in the Harvard Program.  (*Id.* ¶ 18.)  Despite receiving recommendations from individuals at Harvard Business School and 2U, Ahmed claims that a white male who had "less relevant experience"—but prior management experience—was selected for the role.  (*Id.* ¶ 19.) When he requested feedback from Halter, Ahmed claims she told him to "aim lower" and "start with a lesser team or a smaller team," which he interpreted as an expression of bias and stereotyping based on his race and ethnicity.  (*Id.* ¶ 20.)  Around the same time, Ahmed learned that he was being paid less than two of his subordinates, who were white. (*Id.* ¶ 21.)  Ahmed communicated this disparity to 2U's leadership, including Halter, but 2U allegedly failed to take "corrective action."  (*Id.* ¶ 22.)

In October 2020, Ahmed was diagnosed with cancer, which prompted him to take his first FMLA leave from November 2020 to February 2021.  (*Id.* ¶¶ 24–26.)  Ahmed used short-term disability from February through April 2021 and then long-term disability from April 2021 through August 2021.  (*Id.* ¶ 26.)  Upon returning to work in August 2021 following completion of his cancer treatments, Ahmed maintained his title but alleges that many of his duties were reassigned and that he was given tasks below his skill level.

(*Id.* ¶¶ 28–30.)  He further alleges that he was excluded from leadership meetings in which he had previously participated, subjected to disparate treatment, and denied opportunities for advancement.  (*Id.* ¶¶ 29, 31–32.)

Around December 2021 or January 2022, Ahmed alleges that Halter stated she would not promote him to Senior Manager of the Harvard Program, a position for which he had not yet applied.  (*Id.* ¶ 33.)  Ahmed served as the interim manager for this role between March and May 2022 and claims to have fulfilled the job duties.  (*Id.* ¶¶ 33–34.)  Despite Ahmed's service as Interim Senior Manager, Ahmed maintains that Halter still refused to give him the position and instead hired a white woman, Rebecca Minasian, who was less qualified and experienced than him.  (*Id.* ¶¶ 34–35, 37.)  Ahmed further alleges that he was denied a mandatory "Lending Hands" bonus for his service as interim manager, even though he had received the bonus for equivalent work prior to the reorganization.  (*Id.* ¶¶ 14, 38.)

In June 2022, Ahmed took a second period of FMLA leave to extend his parental leave following the birth of his daughter and subsequent COVID-19 complications.  (*Id.* ¶ 40.)  He maintains that he was eligible for FMLA by June of 2022, having worked an estimated 2,080 hours since his return to work in August 2021.  (*Id.* ¶ 39.) Upon his return to work in November 2022 following his second leave of absence, Ahmed claims that Halter set up a meeting between the two of them and Minasian, during which she informed Ahmed that he was being transferred to a different team where he would be

stripped of responsibilities and would be "bored" because she wanted him "to learn a lesson." (*Id.* ¶¶ 42–43.) Ahmed claims that Halter stated that she had "a hard time with people like [him] taking FMLA leave and getting paid without doing any work," that she had explored ways to fire him, and that his new position was effectively a demotion. (*Id.*) Ahmed states he raised concerns of discrimination and retaliation to 2U's HR team but that 2U again failed to take corrective measures. (*Id.* ¶ 46.) Ahmed rejects the contention that he was transferred for legitimate business reasons or to accommodate his preferences. (*Id.* ¶¶ 47–51.)

Ahmed states that the stress of the discriminatory treatment and hostile work environment he experienced at 2U caused him to experience anxiety, insomnia, and chronic pain, which led him to seek a third period of FMLA leave in February 2023. (*Id.* ¶¶ 55–57.) On February 27, 2023, Ahmed submitted an FMLA Leave Request Form and thereafter received an email from 2U's benefits team. (*Id.* ¶ 57; Ex. A.) The email outlined next steps Ahmed needed to take—including calling The Hartford, 2U's third-party leave administrator, to formally request leave and to start a claim. (*Id.*, Ex. A.) This process included providing The Hartford with claim details, including information about the treating physician. (*Id.*) The email further stated that 2U's "[b]enefits team [would] place [him] on unpaid leave in Workday while [his] request [was] in process with The Hartford" and that Ahmed "should <u>not</u> be working under any circumstances." (*Id.*). Ahmed does not state whether he contacted The Hartford to begin his claim.

On March 6, 2023, Ahmed received a voicemail from 2U's HR Business Partner, Natalie Escobar, saying, "I'm just checking in on you . . . at this point it does seem like there is job abandonment . . . ." (*Id.* ¶ 59; Ex. V.)  Ahmed returned the call, claiming that he was on approved FMLA leave as of February 27, 2023.  (*Id.* ¶ 60.)  Ahmed alleges that Escobar responded that the FMLA "would not apply in this case" and that Ahmed could either "resign within 48 hours or be terminated for job abandonment." (*Id.* ¶ 60.)  Ahmed ultimately resigned on March 8, 2023, and claims that his "resignation was submitted under extreme duress and coercion." (*Id.* ¶¶ 62–63.)  But his status in Workday was listed as "terminated." (*Id.*, Ex. X.)  Ahmed contends that 2U's actions have made it difficult for him to find equivalent employment.  (*Id.* ¶ 65.)

## II.    PROCEDURAL HISTORY

On October 23, 2023, Ahmed filed a charge of discrimination against 2U with the EEOC.  (Compl. ¶ 4.)  On December 6, 2024, the EEOC dismissed Ahmed's charge and issued Ahmed a right-to-sue letter.  (*Id.*)

On April 3, 2025, Ahmed initiated this action against 2U alleging that they engaged in discrimination.  (*Id.* at 1.)  Count I alleges discrimination based on race and national origin in violation of Title VII of the Civil Rights Act and the Minnesota Human Rights Act (MHRA).  (*Id.* ¶¶ 66–73.)  Count II asserts that 2U failed to accommodate Ahmed's disabilities and subjected him to disability discrimination in violation of the ADA and MHRA.  (*Id.* ¶¶ 74–80.)  Counts III and IV assert claims under the FMLA for interference and retaliation, respectively.  (*Id.* ¶¶ 81–97.)  Count V alleges that Ahmed was subject to

a hostile work environment under Title VII, the ADA, and the MHRA. (*Id.* ¶¶ 98–103.)

Count VI alleges retaliation in violation of Title VII, the ADA, the FMLA,[3] and the MHRA.

(*Id.* ¶¶ 104–108.)

Defendant 2U now moves to dismiss Ahmed's claims under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, or

alternatively, under Rule 12(b)(3) for improper venue. (Mot. to Dismiss, Sept. 26, 2025,

Docket No. 13.)

**DISCUSSION**

**I.    STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

Court considers all facts alleged in the complaint as true to determine if the complaint

states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the

motion to dismiss stage, the Court may consider the allegations in the complaint as well

as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken

Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). "A court may dismiss a claim under Rule

12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the

claim is time-barred." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

---

[3] The FMLA portion of Count VI is duplicative of Count IV. The Court will therefore disregard the FMLA portion of Count VI.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court liberally construes documents filed by a pro se litigant and holds them to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, pro se litigants are not excused from complying with substantive or procedural law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

## II.    ANALYSIS

Defendant argues that Ahmed's Complaint must be dismissed because it fails to state a claim on which relief can be granted. The Court will first address Ahmed's federal claims before turning to his state law claims.

### A.      Title VII and ADA Claims

Ahmed alleges that 2U discriminated against him because of his race and national origin under Title VII and his disability under the ADA; failed to accommodate his disability under the ADA; subjected him to a hostile work environment; and engaged in retaliation (Counts I, II, V, VI, and VII).

Plaintiffs "must file suit within ninety days of receiving a right to sue letter" under Title VII and ADA.   42 U.S.C. § 2000e-5(f)(1), 12117(a); *see also Jackson v. Hennepin Healthcare Sys., Inc.*, 134 F.4th 1262, 1263 (8th Cir. 2025).

In his Complaint, Ahmed states that "[t]he EEOC issued a Notice of Right to Sue on December 6, 2024, and Plaintiff commenced this action within 90 days of receiving said notice."  (Compl. ¶ 4.)  Ahmed does not state when he received the notice and did not provide any exhibits establishing such a date.  However, 2U provided data from the EEOC portal, which reflects that the EEOC emailed Ahmed on December 6, 2024, alerting him that the right-to-sue letter had been posted.  (Decl. of Neil F. Young ("Young Decl.") ¶ 3(c), Ex. C at 3–4, Sept. 26, 2025, Docket No. 16.)  The EEOC log also showed that Ahmed downloaded the notice letter less than an hour later.[4]  (*Id.*, Ex. C at 3.)  Because Ahmed received the right-to-sue letter on December 6, 2024, he had until March 6, 2025, to file

---

[4] Ahmed contends that the EEOC portal information provided by 2U constitutes extrinsic evidence in violation of Fed. R. Civ. P. 12(d) and D. Minn. L.R. 7.1(I).  The Court disagrees.  Because Ahmed's Complaint alleges he filed this action within ninety days of receiving the right-to-sue letter from the EEOC, the EEOC information filed by 2U in support of its motions is "necessarily embraced by the pleadings."  *See Schriener*, 774 F.3d at 444.

an action.  Ahmed filed this action on April 3, 2025, nearly a month after the ninety-day deadline.  For this reason, the Court will dismiss Ahmed's Title VII and ADA claims with prejudice as time-barred.

### B.    FMLA Claims

Ahmed asserts claims for interference, discrimination,[5] and retaliation under the FMLA.  (*See* Compl. ¶¶ 81–97.)

Under the FMLA, employees are entitled "to twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012) (citing 29 U.S.C. § 2612(a)(1)).  An employee is eligible for FMLA leave only if their employer employs fifty or more employees and those employees work within a seventy-five-mile radius of the worksite.  29 U.S.C. § 2611(2)(B)(ii).  If an employee wishes to take FMLA leave, he or she must first provide notice to their employer.  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. § 2612(e)(2)).

Ordinarily, FMLA claims must be brought within two years of "the date of the last event constituting the alleged violation for which the action is brought."  29 U.S.C. § 2617(c)(1).  If the alleged violation is willful, the claim must be brought within three

---

[5] Although Ahmed does not characterize any of his claims as FMLA discrimination claims, the Court understands some of them to allege discrimination under the FMLA.  *See Kuklenski v. Medtronic USA, Inc.*, 635 F. Supp. 3d 726, 737 (D. Minn. 2022) (construing the plaintiff's claims as discrimination instead of retaliation when her FMLA claim was that "she was terminated for exercising her FMLA rights—that is, for taking FMLA leave").

years.  29 U.S.C. § 2617(c)(2).  The employer acts willfully if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Hanger v. Lake Cnty.*, 390 F.3d 579, 583–84 (8th Cir. 2004) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

The Eighth Circuit recognizes three types of claims under 29 U.S.C. § 2615: (1) entitlement claims,[6] in which "an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act"; (2) retaliation claims, in which an employer takes an adverse action against an employee who "opposes any practice made unlawful under the FMLA"; and (3) discrimination claims, in which an employer takes an adverse action against an employee who exercises their rights under the FMLA.  *Pulczinski*, 691 F.3d at 1005–06.

For his FMLA claims, Ahmed must establish that he provided 2U notice of his need for leave.  *See Bosley v. Cargill Meat Sols. Corp.*, 705 F.3d 777, 780, 784 (8th Cir. 2013); *see also Huber v. Westar Foods, Inc.,* 139 F.4th 615, 621 (8th Cir. 2025) (explaining that an employee need not "invoke the FMLA by name" but must put the employer on adequate notice that such employee might be need of leave).

---

[6] The Eighth Circuit previously referred to entitlement claims as "interference" claims. *See Bosley v. Cargill Meat Sols. Corp.,* 705 F.3d 777, 780 (8th Cir. 2013) ("For the sake of clarity, what we formerly described as 'interference' claims henceforth shall be called 'entitlement' claims.").

### 1.    FMLA Entitlement/Interference Claims

To properly state an FMLA entitlement claim, Ahmed "must show only that he . . . was entitled to the [FMLA] benefit denied." *Stallings*, 447 F.3d at 1050 (citation omitted). Because Ahmed was granted FMLA leave in November 2020 and June 2022, he can only allege that he was denied the benefit for the leave requested in February 2023. However, Ahmed fails to establish that he was an eligible employee in February 2023 and therefore entitled to FMLA leave. Ahmed alleges that he was eligible for FMLA because he "worked for Defendant for more than 12 months and more than 1,250 hours in the 12 months preceding his leave requests" and that 2U employed "more than 50 employees." (Compl. ¶¶ 83–84). He further explains that he "worked approximately 520 hours, which, combined with his hours from February 2022 to October 2022 before his parental leave . . . exceeded the 1,250-hour requirement for his February 2023 FMLA leave request." (*Id.* ¶ 39.)

Ahmed's allegations are insufficient. Under 29 U.S.C. § 2612(a)(1), eligible employees may take "a total of 12 workweeks of leave during any 12-month period." Ahmed states he took both parental leave and FMLA leave between June 2022 and November 2022 but does not specify how much FMLA leave he took during this period. (Compl. ¶ 40.) There are 20 weeks between June 11 and November 1. Ahmed could have taken a full 12-week period of FMLA during this time, which would have made him ineligible for additional leave under the FMLA until June 2023—four months after he requested his final period of leave at 2U.

Additionally, Ahmed fails to adequately allege that 2U employs 50 or more employees within 75 miles of the worksite as required under 29 U.S.C. § 2611(2)(B)(ii). In fact, Ahmed's Complaint does not clearly allege where worksite is: Ahmed was a remote employee for 2U, which he alleges is headquartered in Maryland (Compl. ¶ 8) —but according to his Workday profile (*Id.*, Ex. B), his worksite appears to have been located in St. Paul, Minnesota.   For these reasons, Ahmed fails to adequately plead an interference/entitlement claim under the FMLA, and the Court will dismiss these claims without prejudice.

### 2.    FMLA Retaliation & Discrimination Claims

Next, for his retaliation and discrimination claims, Ahmed must allege "(1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between [his] action and the adverse employment action." *Pulczinski*, 691 F.3d at 1007 (citing *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 754 (8th Cir. 2011)); *see also Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). An employment action is considered "materially adverse" if it results in "a tangible change in working conditions that produces a material employment disadvantage." *Pulczinski*, 691 F.3d at 1007 (citation omitted). Under the FMLA, the plaintiff "must show actual monetary loss to recover." *Hasenwinkel v. Mosaic*, 809 F.3d 427, 434 (8th Cir. 2015). "[T]ermination is unequivocally an adverse employment action." *Id.* at 433.

Ahmed's allegations of FMLA discrimination and retaliation are time-barred to the extent they took place before April 2022. *See* 29 U.S.C. § 2617(c)(1). Whether events

-13-

taking place between April 2022 and April 2023 are time-barred turns on whether 2U "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FMLA]." *See Hanger*, 390 F.3d at 583; 29 U.S.C. § 2617(c)(2).  The bulk of Ahmed's claims fall within this period.   Because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), the Court will review each alleged event occurring during or after April 2022 in isolation to determine whether it is time-barred and meets pleading requirements.

### a.      Events Following Ahmed's First Leave

From March to May 2022,[7] Ahmed served as Interim Senior Manager.  (Compl. ¶ 34.)  He alleges that Halter "explicitly informed him that she would not give him the permanent position"; that he was denied the "Lending Hands" bonus that was owed to him by company policy; and that both actions were retaliatory[8] for his FMLA leave from November 2020 to February 2021.  (*Id.* ¶¶ 35–36, 38).  These allegations are sufficient to

---

[7] Though Ahmed does not clearly allege when between March and May 2022 each of the alleged events occurred, Exhibit O shows that Ahmed learned of the Senior Manager hiring decision on April 5, 2022.  (Compl., Ex. O.)  The Court will consider that date as the date of the failure to promote allegation.  Additionally, Exhibit G shows that Ahmed had previously received the "Lending Hands" bonus after completing interim management coverage, so the Court understands that the bonus Ahmed was allegedly denied would have been initiated after he completed the period of coverage from March to May 2022.  (Compl., Ex. G.)

[8] The Court notes that Ahmed is actually alleging an FMLA discrimination claim here, but that distinction does not change the analysis.

allege willfulness under the *McLaughlin* standard, so the Court will consider these allegations on the merits.

Ahmed alleges that he engaged in a protected activity under the FMLA by taking FMLA leave from November 2020 to February 2021.  (*Id.* ¶¶ 85, 94); *see also Pulczinski*, 691 F.3d at 1007.  Next, Ahmed alleges that he suffered materially adverse employment actions when he was denied a promotion to the Senior Manager position and a bonus for acting as interim Senior Manager.  Finally, Amend must allege a causal link between Ahmed's FMLA leave and these adverse employment actions.  *See Pulczinski*, 691 F.3d at 1007*.*

Here, Ahmed's claims fail for several reasons.  First, the alleged adverse actions occurred more than a year after Ahmed's first FMLA leave ended.  While this fact does not foreclose a finding of causation, it does little to support it.  *See Huber*, 139 F.4th at 623 ("Temporal proximity between a protected activity and a decision to fire, demote, or take other adverse action against an employee *can* support an inference of causation . . . . the ultimate question . . . remains whether the evidence 'gives rise to an inference of a retaliatory motive.'" (citation omitted)).

Moreover, Ahmed alleges that he was "effectively demoted" following his return from medical leave, (Compl. ¶ 30), but that is not enough for the Court to reasonably draw the inference that his FMLA leave was a deciding factor in 2U's decision not to promote him or pay him the bonus.  Ahmed states that he heard from his manager that

"Halter had decided she would not allow [him] to be promoted to the Senior Manager role" and that "[t]his statement was made before [he] had even applied for the position, demonstrating Ms. Halter's pre-determination to prevent [his] further advancement based on discriminatory motives." (*Id.* ¶ 33.)  However, simply stating that Halter's motives were discriminatory is conclusory and fails to give rise to a reasonable inference of causation.  *See Twombly.*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  Similarly, Ahmed fails to allege facts plausibly linking his FMLA leave to the denial of the bonus.  While he asserts that the bonus "was awarded to white employees in similar situations but denied to both Black employees who served in interim roles" (Compl. ¶ 38), that allegation does not support an inference that the denial was connected to his use of FMLA leave.  The Court will therefore dismiss this claim.

### b.      Events Following Ahmed's Second Leave

Ahmed alleges further discriminatory behavior following his return to work on November 1, 2022, after taking FMLA leave from June 2022 through October 2022. Ahmed states that he was brought into a meeting with Minasian, his manager, and Halter two days after his return from leave, during which he was informed that he would be transferred to a new team. (*Id.*  ¶¶ 40–43.)  At this meeting, Ahmed claims Halter stated the following:

-16-

- "I have a hard time with people like you taking FMLA leave and getting paid without doing any work."

- "I explored with HR how we [can] let [you] go."

- "You'll be bored on the Berkeley team . . . I want you to learn a lesson."

- "Your title will stay the same, but your day-to-day responsibilities will be very basic.  So you can say that it's a demotion."

- "As a senior and a manager before you left [on FMLA leave], you had a lot of responsibilities . . . . [But] we're starting [you] back at scratch."

(*Id.* ¶¶ 42, 44.)

In February 2023, Ahmed was reassigned to "an experimental rotational [analytics] team," that he claims was "not . . . set up for success," "lacked clear long-term prospects," and "was composed primarily of long-tenured employees who were perceived as 'burned out.'"  (*Id.* ¶¶ 50, 52–54.)  Ahmed heard "suggestions that the team would be subject to layoffs in June 2023."  (*Id.* ¶ 52.)

Although Ahmed characterizes his transfer as a demotion, he does not allege that such demotion resulted in any reduction in pay, benefits, or job title.  Nor does he allege any other tangible change in working conditions.  As a result, Ahmed's allegations fail rise to the level of being a materially adverse employment action sufficient to state an FMLA discrimination claim.  *See Chappell v. Bilco Co.*, 675 F.3d 1110, 1117 (8th Cir. 2012) ("Mere inconvenience without any decrease in title, salary, or benefits or that results only in minor changes in working conditions does not meet this standard." (citation and internal quotation marks omitted)).

Ahmed' s assertion that the new team might be subject to future layoffs is likewise insufficient because it does not allege the concrete, monetary loss that is required to state a claim under the FMLA. *See Hasenwinkel*, 809 F.3d at 434 ("FMLA limits damages to actual monetary loss."). Because the FMLA permits recovery for monetary damages only, the Court is unable to redress non-monetary harm suffered by Ahmed under the FMLA. Because Ahmed fails to allege a material adverse employment action and fails to allege that he suffered any monetary harm resulting from this transfer, the Court will dismiss this claim.

### c.    Events Following Ahmed's Third FMLA Leave Request

Ahmed sought a third period of FMLA leave on February 27, 2023, due to "anxiety, insomnia, and chronic pain associated with job-related stress." (Compl. ¶¶ 55–57.) After Ahmed requested leave, 2U emailed him the required next steps, including that he contact The Hartford, and instructed him to not perform any work while his request was being processed. (*Id.* ¶ 57; Ex. A.) Ahmed does not allege that he contacted The Hartford as instructed, but he includes screenshots from The Hartford's website, which are attached as Exhibit U to his Complaint. The first screenshot depicts information regarding Ahmed's 2022 FMLA leave. (*Id.*, Ex. U.)

On March 6, 2023, Natalie Escobar, 2U's HR Business partner, reached out to Ahmed and expressed her concerns that he had abandoned his job. (*Id.* ¶ 59.) She informed Ahmed that the FMLA did not cover his requested leave. (*Id.* ¶ 60.) Ahmed alleges she gave him an ultimatum to either resign within 48 hours or be terminated. (*Id.*)

Ahmed states that he resigned on March 8, 2023, under "extreme duress and coercion." (*Id.* ¶ 62.) Ahmed alleges that this constructive discharge constituted FMLA retaliation, as did the accusation of job abandonment.

As previously discussed, Ahmed fails to plausibly allege that he was eligible for FMLA leave in February of 2023. If Ahmed exhausted his 12 weeks of FMLA leave between June and November 2022, he was not eligible for additional FMLA leave on February 27, 2023. Therefore, Ahmed fails to plausibly allege that "that he engaged in a protected activity under the [FMLA]" by requesting leave on February 27, 2023. *See Pulczinski*, 691 F.3d at 1007. Accordingly, the Court will dismiss this claim.

**C.      State Law Claims**

The Court's jurisdiction over Ahmed's MHRA claims—which form parts of Counts I, II, V, VI, and VII—rests solely on its supplemental jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) permits federal courts to exercise supplemental jurisdiction over claims that are a part of the same case or controversy as the claims that fall within the district court's original jurisdiction. Under 28 U.S.C. § 1367(c)(3), the Court may, in its discretion, decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." "The district court is afforded broad discretion in determining whether to exercise supplemental jurisdiction." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011).

Here, because the Court will dismiss Ahmed's federal claims, the Court declines to exercise supplemental jurisdiction over Ahmed's state law claims. The Court will

therefore dismiss those claims without prejudice. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) ("[T]he state claims may be dismissed without prejudice and left for resolution to state tribunals" if the Court declines to exercise supplemental jurisdiction.).

## CONCLUSION

The Court concludes that Ahmed does not plead any federal claims upon which relief can be granted. The Court will, therefore, grant Defendant's motions to dismiss. The Court will dismiss Ahmed's claims under Title VII and the ADA with prejudice because such claims are time barred. The Court will dismiss Ahmed's FMLA claims without prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and will thus dismiss those claims without prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant 2U, Inc.'s Motion to Dismiss (Docket No. [13]) is **GRANTED**, as follows:

1. Plaintiff Abdimajid Ahmed's Title VII and ADA claims (portions of Counts I, II, V, and VI) are **DISMISSED with prejudice**.

2. Plaintiff Ahmed's FMLA claims (Counts III and IV) are **DISMISSED without prejudice**.

3. Plaintiff Ahmed's MHRA claims (portions of Counts I, II, V, and VI) are **DISMISSED without prejudice**.

-20-

4. Plaintiff Ahmed's claims for Constructive Discharge (Count VII) and Evidence Preservation Concerns (Count VIII) are **DISMISSED as abandoned**.

5. Plaintiff Ahmed's Complaint (Docket No. [1]) is **DISMISSED** in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  August 4, 2026                              _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                       United States District Judge